In the Matter of EDWARD A. BROWN, an Attorney, Respondent.

First Department, October 28, 1932.

*Einar Chrystie*, for the petitioner.

*Selden Bacon*, for the respondent.

FINCH, P. J.   The respondent was admitted to practice as an attorney and counselor at law of the State of New York at a term of the Appellate Division of the Supreme Court, First Department, on July 9, 1901.

By the petition herein the respondent is charged with professional misconduct, as follows:

Charge No. 1. In 1929 Mayer J. Blumberg was the owner of a third mortgage on premises known as Nos. 125–127 Allen street, borough of Manhattan, city of New York.   Respondent was the attorney for the owners of the first and second mortgages on the premises, and some time prior to December 5, 1929, he had as such attorney commenced actions to foreclose the second mortgage thereon.   After the actions had been commenced, Blumberg and his attorney, Samuel Cherkos, Esq., entered into negotiations with respondent, with the view of protecting Blumberg's interests, which negotiations resulted in an agreement embodied in a letter prepared by the respondent, dated December 5, 1929, and delivered to Mr. Cherkos, of which the following is a copy:

" SAMUEL CHERKOS, Esq.,
      " 67 West 44th St.,
          " New York.
                    '' Re Mayer *v.* Dryden.

" Dear MR. CHERKOS:  In connection with the pending foreclosures affecting the premises 125 and 127 Allen St., in which you represent the defendant Blumberg, a junior mortgagee, this will confirm the understanding between us, and that is that these

actions are to be continued to foreclosure. Mr. Blumberg is to deposit with me in escrow, during the day, his check for $500, which I am to hold until Tuesday or Wednesday of the following week, and if by that time your client desires to withdraw from the proposition as outlined hereafter, I will return to him the full sum of $500. If, on the other hand, he desires to go through with the proposition, it will be held in accordance with the terms of said proposition.

" The proposition above referred to is as follows, and is made subject to final ratification by my client, the plaintiff in the above foreclosure actions. The foreclosure actions are to be continued to and through the sale, and if bid in by the plaintiff or the plaintiff's representative, they are to be reconveyed to your client or his nominee, subject to the existing first mortgage on each parcel, the purchaser to give back a new second mortgage for the principal sum of the respective mortgages foreclosed, and then the new second mortgage is to be consolidated, so as to create one first mortgage lien on each parcel with the existing first mortgage. The grantee, of course, will pay the mortgage tax and recording fees of the new mortgage and consolidation agreements and for recording the deeds, and in addition thereto will pay the interest on the existing first mortgages as well as the interest on the second mortgages under foreclosure, all computed to January 1, 1930. The consolidated mortgage to be for a term of years maturing at the same date of maturity as the mortgages under foreclosure and to be amortized at the same rate as the foreclosed mortgages.

" Your client will also pay the costs of the foreclosure, as indicated in the notice of sale, and also the referee's fees, auctioneer's fees, advertising fees, being the usual expenses of the sale as referred to in said notice of sale. Your client will receive credit for the net rents collected by the receiver appointed in the foreclosure actions, which may be applied against the foregoing payments so as to reduce the actual cash payment made by your client.

" It is understood that should the plaintiff refuse to ratify the foregoing by executing an agreement to that effect, either by the plaintiff personally, or through the undersigned as her attorney, then the deposit of $500 thereby made by your client will be returned to him by Wednesday or Thursday the coming week.

" Truly yours,
" EDWARD A. BROWN.

" P. S. My clerk will call on Mr. Blumberg during the day to pick up the check.

" P. S. I am signing this letter as I assume it is correct. Mr. Brown left without seeing it, and it is subject of course to his approval.                   GRACE H. MANNELLA."

Blumberg delivered to the respondent's representative a check for $500, which was subsequently deposited to the credit of his bank account. Thereafter Blumberg's attorney notified the respondent within the time fixed by the escrow agreement that Blumberg desired to withdraw from the proposition and requested the return of the $500. The respondent failed to return the money. On or about January 23, 1930, he sent Mr. Cherkos a check for $500, which was not paid when presented because of insufficient funds to the credit of respondent's account.

·It is further charged that the respondent did not return the money to Blumberg until March 4, 1930, after he had been advised that the matter had been called to the attention of the Bar Association, and that in the meantime he converted it to his own use.

Charge No. 2. On October 14, 1930, Joseph Eisinger, Esq., as attorney for Lewis & Co., entered a judgment on default against Henrietta Tilghman deForest in the sum of $154.55. Thereafter he obtained a third party order, containing the usual injunction clause, and served it upon the Forty-second Street Branch of the National City Bank, in which the defendant had an account. Thereafter the respondent, as attorney for the defendant, entered into negotiations with Eisinger for a settlement of the claim and a withdrawal of the third party order. These negotiations resulted in an agreement to settle the claim for $145.50, of which $45.50 was paid upon the execution of the stipulation of settlement and the remaining $100 was to be paid on November 25, 1930. The third party order was withdrawn. The following is a copy of the letter setting forth the terms of the settlement:

" *October* 22, 1930.

" JOSEPH EISINGER, Esq.,
   " 36 West 44th St.,
      " New York City.
         Re Lewis *vs.* Tilghman.

" DEAR SIR: In connection with the judgment in the above entitled action entered by you on October 14, 1930, in which matter a stipulation of settlement has been simultaneously entered herein, this will confirm my statement to you that I hold in escrow the sum of $100 to secure payment to you of the balance of $100 under said stipulation of settlement to be made pursuant to said stipulation on or before November 25, 1930.

" This escrow is upon a further understanding that should my client, the defendant in said action, fail to make said payment to you by November 25, 1930, I will pay you the sum of $100 within three or four days thereafter, providing you notify me of

my client's default, and that upon my payment to you of $100 you will let me have a properly executed assignment of said judgment.

" This letter is written to you for the purpose of inducing you to enter into the stipulation of settlement and to withdraw the third party order served by you attaching my client's bank account. " Very truly yours,

(sgd.)   E. A. BROWN."

On November 21, 1930, Eisinger sent respondent a letter reading as follows: " Please be advised that the balance of $100 which you hold in escrow is due on the 25th day of this month.

" Will you, therefore, kindly see to it that a check for this sum is forwarded to me so that it reaches my office not later than said date? "

Eisinger did not receive any reply to this letter, and on November 26, 1930, he sent the respondent another letter, reading as follows: " On November 21st I wrote you stating that the sum of $100 would be due in this matter on November 25th.   I find that despite this letter and my numerous telephone calls payment has not as yet been made.   I must, therefore, advise you that unless a check in the sum of $100 is in my office not later than Saturday morning of this week, I shall proceed to recover the amount due together with the costs which I had previously waived in reliance upon the faithful execution of the agreements heretofore made."

Not having received any reply to either of the foregoing letters, on December 1, 1930, Eisinger sent the respondent a third letter, reading as follows: " As I informed you upon previous occasions the sum of $100 was not paid by your client in accordance with our agreement.

" I find that my letters to you have been unanswered and that likewise my numerous telephone calls have been ignored.

" I have felt reluctant to proceed for the recovery of this money in accordance with the terms of your letter to me of October 22nd, wherein you stated that you held in escrow the sum of $100.   My client's insistence upon the money and my desire to obtain results for him place me in a position now where I must proceed immediately.

" I must, therefore, remind you that unless a check in full payment of the balance due is in my office by 5 o'clock on Tuesday, December 2, 1930, I shall feel constrained to proceed in order to effect recovery under the terms of the escrow agreement."

Thereafter Eisinger, acting in behalf of Lewis & Co., brought a suit against the respondent to recover the sum of $100.   The

respondent defaulted. Eisinger did not enter judgment but brought the matter to the attention of the petitioner's committee on grievances, and, after respondent had been notified that charges of professional misconduct based upon the transaction referred to would be investigated by the committee, he paid the balance due.

It is charged that the respondent has been guilty of professional misconduct in failing to carry out the terms of his letter of October 22, 1930, above quoted, and in obtaining Eisinger's consent to the withdrawal of the third party order by falsely representing that he had in his possession $100 with which to carry out the terms of the stipulation.

The material allegations in the respondent's amended answer to the first charge are in substance as follows: That immediately after dictating the escrow agreement dated December 5, 1929, the respondent left his office and thereafter went to Albany on business and did not return until the following Monday; that the check for $500 received from Blumberg by one of the respondent's representatives was deposited in the respondent's bank account without the knowledge of the respondent and contrary to his intention while he was out of the city; that when respondent returned to the office and was informed of the deposit of the Blumberg check he set aside the sum of $500 in cash and placed the same in an envelope, together with the escrow agreement, in his safe, where he kept it until the repayment to Blumberg was made. The respondent further alleges that Blumberg's attorney did not notify him that Blumberg had decided not to carry out the arrangement set forth in the escrow agreement until December 12, 1929, and that he had a claim on the money deposited by Blumberg for the payment of his fees in the event that Blumberg failed to carry out the agreement. It is further alleged in the answer of the respondent that he notified Blumberg's attorney that he was willing to return the deposit less his fees but the attorney did not consent to this arrangement, and finally the respondent consented to waive his claim and instructed an office associate to take a check for the full amount to Blumberg for the purpose of having him indorse the same and present it to the respondent for payment out of the cash which he had set aside for that purpose. Respondent further alleges that the check was delivered to one of Blumberg's sons with instructions to have his father indorse it and present it to the respondent for payment, but instead Blumberg caused the check to be deposited in the bank upon which it was drawn. The respondent further alleged that at the time he paid Blumberg he had no knowledge of any complaint having been made against him to the grievance committee of the petitioner.

In answer to the second charge set forth in the amended petition, the respondent alleges that at the time of the delivery of the letter referred to as the escrow agreement, he informed Joseph Eisinger, the attorney for Lewis & Co., that he did not have in his possession the sum of $100 in cash but on the contrary personal property belonging to Henrietta Tilghman deForest valued in excess of $100 and that the respondent was personally assuming responsibility for the value of that property; that the recital in the letter of October 22, 1930, that respondent held in escrow the sum of $100 was intended and was understood to be a recital that the respondent had the security in his possession which was pledged by him for the payment of the balance. It is further alleged that the respondent at no time had in his possession any money belonging to Henrietta Tilghman deForest to be used for the purpose specified in the letter of October 22, 1930, and that Eisinger was fully informed of that fact and that the letter of October 22, 1930, was delivered to Eisinger for the purpose of securing to his client the ultimate payment of the $100.

Respondent further alleges that as soon as the personal property held by him was disposed of and out of the first moneys received therefor he immediately paid the amount due to Eisinger's client. Respondent also alleges that the reason why he did not pay the amount due Lewis & Co. out of his own pocket was that he did not have ready funds for that purpose.

The learned referee has duly reported, finding the respondent guilty of the first charge, and also guilty of the second charge to the extent of delivering to Eisinger an untrue statement that the respondent had in his possession the sum of $100 to be used for the purpose of paying the balance of the judgment.

The matter now is before this court upon motion of the petitioner for confirmation of the report of the referee and for such other action as may be deemed just and proper.

A careful consideration of the record shows that the findings of the learned referee are sustained by the weight of the evidence.

In reference to the first charge, the respondent unequivocally undertook in writing to return in full the amount deposited in escrow. There was no reference to any deduction or fee. In response to the repeated demands for payment, there was no claim by the respondent that payment was being withheld because of a claim for compensation. We deem it unnecessary to analyze the testimony of the respective witnesses concerning the material issues. This was contradictory. The great weight of evidence and

the probabilities are against the respondent. The truth appears to be that the respondent used for his own needs the $500 deposited in escrow, and was without the means of returning it when it was rightfully demanded under the escrow agreement.

The respondent thus took for himself money to which he had no right. It is trite to say that the essence of the duty of an attorney is absolute fidelity to a trust.

With respect to the second charge, it is clear from the evidence that, assuming the respondent had in his possession pawn tickets of his client and relied upon these as a means of paying the $100, no such knowledge was conveyed to Eisinger. Here, also, in response to the repeated demands of Eisinger for the payment of the $100 stated to be held in escrow under the agreement, the respondent made no claim that the $100 was payable out of the proceeds of the sale of pawn tickets. It would have been the natural and probable thing to have asserted such an excuse if it in fact had existed. When complaint was made against this respondent, instead of being frank in his testimony, he sought to evade. Frankness merits some consideration, but frankness was lacking here.

The fact of complete restitution present in this case, even though not made until complaint to the Association of the Bar of the City of New York, calls for some clemency.

It is the judgment of this court that the respondent should be suspended from practice for a period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

MERRELL, McAVOY, MARTIN and TOWNLEY, JJ., concur.

Respondent suspended for two years.